UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SEAN W. QUIGLEY,

        Plaintiff,

v.

TONY TREWILER et al.,

        Defendants.
_____/

Case No. 1:19-cv-480

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## **Discussion**

### I.    **Factual allegations**

Plaintiff Sean W. Quigley is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility

(IBC) in Ionia, Michigan. Plaintiff sues the following MDOC employees at IBC: former Warden Tony Trewiler[1], Assistant Warden J. Davids, Resident Unit Manager (RUM) R. Mote, and Prisoner Counselor (PC) J. Buchin.

Plaintiff alleges that he was confined in administrative segregation from November 3 to December 9, 2015, when Defendants Davids, Mote, and Buchin were members of the Security Classification Committee (SCC). During that time, the SCC interviewed him only once, on November 17, 2015. But according to MDOC Policy Directive 04.05.120 ¶ BBB, the SCC should have interviewed him every seven days for the first 60 days of his confinement in segregation. After Plaintiff filed a grievance about the issue, he allegedly received three "falsified" SCC review forms claiming that he had been interviewed by the SCC on November 10, November 24, and December 9, 2015. (Compl., ECF No. 1, PageID. 3.) Defendant Trewiler signed all of these reviews.

Plaintiff complained about the lack of reviews and the falsified documents to the Office of Legislative Corrections Ombudsman. Plaintiff asserts that the Ombudsman's office informed him that the IBC wardens "admitted guilt." (*Id.*) According to a March 2017 letter to Plaintiff from the Ombudsman's office, Plaintiff was confined in segregation from October 29, 2015, to January 20, 2016, and "it appears [he was] not seen at intervals of no more than 7 calendar days twice during [his] first 2 months in segregation[.]" (Letter, ECF No. 1-1, PageID.10.) In other words, during the first 60 days of Plaintiff's confinement in segregation, the SCC did not abide by its seven-day review policy; on two occasions, more than seven days passed between its reviews of Plaintiff's confinement. As to Plaintiff's claim that the signatures on the SCC's reviews

---

[1] The name of the former warden at IBC was spelled "Trierweiler," not "Trewiler". For the purposes of this opinion, however, the Court will use the spelling provided by Plaintiff.

were forged, the Ombudsman's office did not find sufficient evidence to substantiate this claim. (*Id.*)

In short, Plaintiff claims that Defendants are liable because they did not follow prison policy. He also claims that they falsified documents, which is a felony. Plaintiff also alleges that, due to the "treatment" he received from the SCC, he committed "self harm" in January 2016. (*Id.*)

As relief, Plaintiff seeks an injunction requiring the SCC to abide by prison policy, as well as damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

3

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Prison Policy

Defendants' alleged failure to comply with prison policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

### B. Due Process

In some cases, confinement in segregation can implicate a liberty interest requiring due process under the Fourteenth Amendment. Plaintiff apparently claims that the SCC did not interview him often enough; this claim bears some resemblance to a procedural due process claim.

4

Plaintiff does not state a viable due process claim, however, because this is not a case in which Plaintiff's protected liberty interests were at stake.

The Supreme Court long has held that the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff does not allege that his confinement in segregation will inevitably affect the duration of his sentence. Nor does he allege facts indicating that his confinement imposed an "atypical and significant hardship" upon him. Indeed, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth

5

Circuit has held that placement in administrative segregation for a relatively short period of time does not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph,* 410 F. App'x at 868 (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Plaintiff alleges that he was confined in segregation for less than 90 days, and he challenges Defendants' failure to conduct an interview during approximately one month of that period. His total period of confinement was far shorter than the lengthy periods in *Baker* and *Mackey* that did not implicate a liberty interest, and only slightly longer than the 61-day period in *Joseph*. It was not even remotely close to the extremely lengthy periods of confinement in *Selby*, *Harden-Bey*, and *Harris*. Thus, Plaintiff's confinement did not require Defendants to provide due process.

Moreover, Plaintiff does not state a claim because his allegations indicate that Defendants provided him with some process. Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon*

*v. Burch,* 494 U.S. 113, 126 (1990). The process required for an extended period of confinement in segregation is "some sort of periodic review" of that confinement. *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485.

In this case, Plaintiff claims that the SCC met with him only once between November 3, and December 9, 2015, and decided to continue his confinement in segregation. He does not identify any defect in the process that he received at the review hearings or in the basis for the SCC's decisions. Instead, he simply claims that the committee did not meet with him at least once every seven days. But even assuming that Plaintiff's liberty interests were at stake, the Constitution did not require Defendants to meet with him on a weekly basis. Indeed, if 30 days of confinement in segregation does not even implicate a protected liberty interest, per *Sandin*, then surely the single review Plaintiff received during the slightly more than 30-day period of confinement at issue was more than adequate to satisfy whatever process might have been necessary for that time period. Accordingly, for all the foregoing reasons, Plaintiff does not state a due process claim.

### C. Criminal Liability

Plaintiff also contends that Defendants committed a felony by forging SCC review forms. These allegations do not state a constitutional claim under § 1983. Plaintiff does not have

7

an independent constitutional right to have prison officials prepare accurate documentation about his confinement.

Moreover, the fact that Defendants allegedly engaged in criminal conduct does not help Plaintiff's complaint. Plaintiff lacks standing to enforce laws prohibiting criminal conduct. *See Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizen lacks standing to initiate criminal proceedings). As a private citizen, Plaintiff "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Thus, even if Defendants committed a felony, Plaintiff does not state a claim against them.

### III. Statute of Limitations

Even if Plaintiff had stated a viable claim, he would face another problem: his complaint appears to be untimely. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2) (eff. June 12, 2018) (previously § 600.5805(10)); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

---

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. §1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

8

Plaintiff's core claim is that Defendants failed to comply with MDOC policy because they did not review his confinement in segregation at least once every seven days. This claim arose in December 2015. Plaintiff had reason to know of the "harms" done to him by that time. Hence, his claim accrued in December 2015. However, he did not file his complaint until June 2019, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* Mich. Comp. Laws § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

The statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). In this case, it is not clear whether Plaintiff attempted to exhaust his available state remedies, or if he did, how long it took for him to do so. However, Plaintiff filed his complaint more than six months after the three-year statute of limitations expired. It is unlikely that Plaintiff was exhausting his administrative remedies for that entire time period; thus, it is unlikely that tolling would save his complaint from dismissal under the statute of limitations. The Court need not resolve this issue, however, because Plaintiff fails to state a viable claim for the reasons discussed in Section II.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: August 22, 2019 /s/ Janet T. Neff
Janet T. Neff
United States District Judge